UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05 11095 NG

| | |
|---|---|
| THOMAS ROY and LISA ROY,<br>    Plaintiffs,<br><br>v.<br><br>DELAWARE NORTH COMPANIES, INC.<br>- BOSTON,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT, DELAWARE NORTH COMPANIES, INC. - BOSTON'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This is a diversity action sounding in tort in which the plaintiff, Thomas Roy, allegedly suffered injuries after falling down an escalator at the Fleet Center, owned and operated by Delaware North Companies, Inc. – Boston ("Delaware North"). As a result of the alleged injuries suffered by Mr. Roy, his wife, Lisa Roy, has alleged loss of her husband's consortium.

In Count I of the Complaint, the plaintiffs allege that due to the negligence of the defendant "in the maintenance and/or operation of said escalator," the plaintiffs were caused to fall and suffer damages.[1] Further, in Mr. Roy's Answer to Interrogatory No. 5, he alleges that the subject escalator had "defects" which caused Ms. Roy's heel to catch in the escalator threads.[2]

---

[1] See Complaint, attached hereto as Exhibit 1.
[2] See Plaintiff, Thomas Roy's Answers to Interrogatories, attached hereto as Exhibit 2.

Delaware North is entitled to summary judgment because the plaintiffs have failed to proffer evidence of an escalator defect, or that Delaware North knew or should have known of any dangerous condition.

## II.   FACTS

On March 10, 2004, the plaintiffs, Lisa Roy (age 44) and Thomas Roy (age 49), attended a Boston Celtics game in a luxury suite at the Fleet Center. *Plaintiff, Lisa Roy's Deposition at 22-27*.[3] The game started between 7:00 and 7:30 p.m. *Id.* Before the game, the plaintiffs drove to Boston from their home in Hooksett, N.H. *Id.* After the game, they had planned to spend the night at the Copley Plaza Marriott in Boston, MA. *Id.* Both plaintiffs deny drinking alcohol before the game. *Id.*; *Plaintiff, Thomas Roy's Deposition at 12*.[4]

While in the luxury suite, the plaintiffs ate chowder, shrimp, and sandwiches while socializing with other guests. *Exhibit 4 at 16-22*. The luxury suite had a "self-service" refrigerator which provided beer and wine for guests. *Id.* During the game, Mr. Roy served himself four to five beers that were provided by the luxury suite owner. *Id.* Ms. Roy drank three "rum and cokes" that were purchased from a vendor outside the suite. *Exhibit 3 at 44-46*. Both plaintiffs denied they were intoxicated. *Exhibit 3 at 51*; *Exhibit 4 at 23*. Mr. Roy stated the following at his deposition:

> Q:   Did you ever feel that you were intoxicated? *Exhibit 4 at 23*.
>
> A:   No, sir. *Id.*

Ms. Roy stated the following at her deposition:

---

[3] Relevant pages of Ms. Roy's deposition transcript are attached hereto as Exhibit 3.
[4] Relevant pages of Mr. Roy's deposition transcript are attached hereto as Exhibit 4.

2

1184314v1

> Q: When you left the Booth [luxury suite], do you feel that you were under the influence of alcohol? *Exhibit 3 at 51.*
>
> MS. MORELLO: Objection. *Id.*
>
> A: No. *Id.*

Approximately twenty minutes after the game, the plaintiffs attempted to exit the Premium Level by descending the subject escalator. *Shema Taylor's Deposition at 15.*[5] Ms. Roy claimed that she lost her footing while descending the escalator which caused her to fall, but could not identify any defect. *Exhibit 3 at 81-82.* Ms. Roy stated the following at her deposition:

> Q: How did the accident happen? *Id. at 61.*
>
> A: My heel got caught when I stepped onto the escalator. *Id. at 62.*
>
> Q: Got caught on what? *Id.*
>
> A: I wasn't looking down. I believe the treads. *Id.*
>
> Q: Well, how do you know it was the treads? *Id.*
>
> A: I don't know. I wasn't looking down. *Id.*
>
> Q: Did you notice anything unusual about the appearance of the treads on the escalator? *Id.*

---

[5] Relevant pages of Ms. Taylor's deposition transcript and photograph of subject escalator are attached hereto as Exhibit 5.

3

1184314v1

A:   No. *Id.*

Q:   You say catch on something. You don't know what part of your shoe caught on what part of the escalator; correct? *Id. at 71.*

A:   Correct. *Id.*

Q:   You don't know if it was the toe, the heel, the side of the shoe; you just feel your shoe was caught? *Id.*

A:   Yes. *Id.*

Q:   You never looked down to see what it was caught on? *Id.*

A:   No. *Id.*

Q:   Did you see any foreign substance on the escalator like a banana peel or anything like that? *Id.*

A:   No. *Id.*

Q:   Any wetness on the escalator? *Id.*

A:   No. *Id.*

Q:   Did you feel any sudden unexpected movement on the escalator when you say your foot got "caught"? *Id.*

A:   No. *Id. at 72.*

Q:   Did you hear any grinding of metal or anything? *Id.*

A: No. *Id.*

Q: So, as I understand what you've told me, you have no explanation for why your right foot got struck on this escalator; correct? *Id.* at 81-82.

A: Correct. *Id.* at 82.

Q: You don't know if the escalator malfunctioned; correct? *Id.*

A: Correct. *Id.*

Q: You don't know if it was a design problem on this escalator; correct? *Id.*

A: Correct. *Id.*

Q: You felt nor heard nothing unusual; correct? *Id.*

A: Correct. *Id.*

Q: Do you know of any reason why you fell on that - - strike that. Do you know anything the Fleet Center did wrong as to cause your foot to get stuck on that escalator? *Id.* at 83.

MS. MORELLO: As of now, do you know. *Id.*

A: I wouldn't know. *Id.* at 84.

Mr. Roy did not know what caused his wife to fall, but recalled reaching out to catch her when he noticed that she was losing her balance. *Exhibit 4 at 35-36*. Mr. Roy does not

remember anything after reaching for his wife, including the fall. *Id.* Mr. Roy testified as follows:

> Q: As you approached the escalator at 10:30 to go down the escalator, did you observe anything about its movement that looked unusual to you? *Id. at 37.*
>
> A: I wasn't paying any attention to it. *Id.*
>
> Q: Nothing out of the ordinary that caught your eye? *Id.*
>
> A: No, sir. *Id.*
>
> Q: Now, in your Answer to Interrogatory Number 5, you say it is my opinion that the elevator [sic] had defects that caused Lisa to catch her heel - - strike that. It is my opinion that the escalator had defects that caused Lisa to have her heel catch in the tread. Why is that your opinion? *Id. at 42- 43.*
>
> A: Because that's what I was told. *Id. at 43.*
>
> Q: Told by whom? *Id.*
>
> A: My wife. *Id.*
>
> Q: And what defects do you say were in the escalator? *Id.*
>
> MS. MORELLO: Objection. You can answer. *Id.*
>
> A: I don't know. *Id.*
>
> Q: Well, did you ask your wife? *Id.*

6

1184314v1

A: No, sir. *Id.*

Q: You've been a contractor for 28 years. You have no idea what defect was in an escalator you say caused your wife to fall down the stairs; right? *Id.*

MS. MORELLO: Objection. You can answer. *Id.*

A: I never installed an escalator. *Id.*

Q: No, but you've never been curious to find out what the defect was? *Id.*

MS. MORELLO: Objection. *Id.*

A: No, sir. *Id.*

Q: So, what I'm understanding here from you, sir, is that your opinion is solely based on what your wife told you? *Id.* at 43-44.

A: Correct. *Id.* at 44.

Q: And she didn't tell you what the defect was? *Id.*

A: No, sir. *Id.*

Q: So, when you say the word escalator had defects plural, are you aware of any plural defects, more than one? *Id.*

A: I'm not aware of any of them. *Id.*

Q: So, whether they had one or two or zero, you have no idea? *Id.*

7

  A:  Correct. *Id.*

  The facts are uncontroverted that the plaintiffs did not notice any defect in the appearance or operation of the escalator before, during, or after the fall. No evidence exists indicating a malfunction with the escalator, nor have the plaintiffs identified an expert in their answers to interrogatories to offer evidence of a defect. *Exhibit 2.*

  Shema Taylor, a security officer on duty at the bottom of the escalator, witnessed the plaintiffs' fall.[6] *Exhibit 5 at 15*. She was stationed at the bottom of the escalator for approximately 20 minutes before the incident occurred. *Id. at 7*. She testified as follows:

  Q:  You said at about ten o'clock or so, which was some 20 minutes after the athletic event ended, you were at the bottom of this escalator, correct? *Id. at 15.*

  A.  Right. Well, in the vicinity of the escalator. *Id.*

  Q:  Right. And at about that time you noticed something unusual happening on the escalator? *Id.*

  A:  Right. Well, I heard something. I mean. . . *Id.*

  Q:  What did you hear? *Id.*

  A:  I heard, you know, a loud banging noise. *Id.*

  Q:  Then what happened? *Id.*

---

[6] Ms. Taylor was employed by Security Systems, Inc., and independent contractor hired by the Garden.

1184314v1

> A: Then I turned and then that's when the, you know, the couple was falling down the escalator. *Id.*
>
> Q: Did you see that? *Id.*
>
> A: Yes. *Id.*
>
> Q: What did you see? *Id.*
>
> A: Them from just about the top of the escalator until the bottom, I just witnessed them falling down the escalator. *Id.*
>
> Q: Was it a man and a woman? *Id.*
>
> A: A man and a woman, right. *Id.*

Further, Ms. Taylor testified that she was unaware of any malfunction in the subject escalator. *Id. at 16.* She stated that she was standing in the vicinity of the bottom of the escalator for approximately twenty minutes before the alleged incident. *Id. at 10.* During that time, Ms. Taylor witnessed a number of individuals utilize the escalator without incident. *Id.* Ms. Taylor testified the following regarding the subject escalator's operation at the time of the accident:

> Q: Okay. And during the 20 minutes that you were standing at the bottom of that escalator, did you ever notice anything unusual about the way the escalator was operating? *Id.*
>
> A: No. It was operating fine. *Id.*

9

> Q: And did you see people coming down that escalator? _Id._
>
> A: Yeah, there was a number of them that was coming down that escalator. _Id._
>
> Q: Did you see anybody fall during that 20 minutes? _Id._
>
> A: No. _Id._

KONE Inc., an outside vendor under contract to perform regular escalator maintenance at the Fleet Center, found no problem with the subject escalator after inspecting it on March 11, 2004.[7] According to Jason Beckett, the Director of Operations at the Fleet Center (now called TD Banknorth Garden), Delaware North was not on notice of any problem or malfunction with the escalator before or after the subject incident.[8]

## III. ARGUMENT

### A. STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once a moving party has filed a proper summary judgment motion, the burden is on the nonmoving party to present evidence showing existence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the present case, the plaintiffs allege negligence in the maintenance and/or operation of the subject escalator. However, the undisputed facts reveal no evidence of a defect in the subject escalator, or that Delaware North knew or should have known about any allegedly dangerous

---

[7] Relevant pages of the KONE Inc. maintenance records are attached hereto as Exhibit 6.
[8] See Jason Beckett's affidavit, attached hereto as Exhibit 7.

1184314v1

condition before the time of the alleged accident. Further, the plaintiffs have not identified an expert to offer evidence of an escalator defect in design or manufacture. Therefore, Delaware North is entitled to judgment as a matter of law.

### B. THE PLAINTIFFS CANNOT RECOVER AS THEY HAVE FAILED TO PROFFER EVIDENCE OF AN ESCALATOR DEFECT.

The plaintiff cannot recover in a negligence action where there is no evidence of a defect that caused an accident to happen. In Enrich v. Windmere Corp., 416 Mass. 83 (1993), a homeowner brought suit against an appliance distributor after the homeowner's house was damaged when a "window box fan" caught fire. Id. The Supreme Judicial Court held that the distributor was not liable because the plaintiff failed to proffer evidence that a defect in the fan caused the fire. Id. Further, the Court reasoned that "the presence of such a defect could not be inferred in the absence of expert testimony." Id.

Similarly, in James v. Boston Elevated Railway Co., 201 Mass. 263 (1909), a train passenger brought suit for personal injury against a railway company alleging negligence for operation of an unsafe rail car. Id. at 264. The Supreme Judicial Court held that there was "no evidence of any defect or want of repair in the car" which would warrant a jury to find proof of the facts alleged. Id.

In the present case, the plaintiffs have failed to proffer evidence of a defect in the subject escalator. Further, the plaintiffs have not identified an expert to offer evidence of an escalator defect. As in Enrich and James, where there was no evidence to suggest that a defect caused the accidents, there is no evidence of a premise defect at the Fleet Center. Therefore, this Court should hold, as in Enrich and James, that the plaintiffs' failure to provide even a scintilla of evidence of negligence is fatal to their case.

1184314v1

### C.     THE PLAINTIFFS CANNOT RECOVER AS THEY HAVE FAILED TO PROFFER EVIDENCE THAT THE DEFENDANT KNEW OR SHOULD HAVE KNOWN ABOUT THE ALLEGED DEFECT.

Even assuming arguendo that an escalator defect caused the plaintiffs' fall, the plaintiffs have failed to show that the defendant knew or should have known of any defect prior to the alleged accident. In the seminal case of Mounsey v. Ellard, 363 Mass. 693 (1973), the Supreme Judicial Court held that landowners are required to exercise "reasonable care in all the circumstances." Id. at 709. However, a landowner is not strictly liable when a lawful visitor is injured on his/her property. Id. Rather, a landlord "should not be liable in negligence unless he knew or reasonably should have known of the defect and had a reasonable opportunity to repair it." Young v. Garwacki, 380 Mass. 162, 170 (1980).

In Leslie v. Glazer, 273 Mass. 221 (1930), the Supreme Judicial Court affirmed the trial court's allowance of the defendant landlord's motion for summary judgment against the plaintiff who allegedly fell down a flight of stairs in a common hallway. "The burden of proof rested upon the plaintiff to show that, if the stairway was defective, the defendant, in the exercise of reasonable care and diligence, knew or ought to have known of the defect long enough before the plaintiff was injured to have repaired or remedied it." Id. at 223. The Court held that the plaintiff had failed to prove that the landlord knew or should have known about the alleged defect. Id.; See also Keeney v. DiCicco, 353 Mass. 773, 774 (1968) (motion for summary judgment appropriate where plaintiff failed to show defendant knew or should have known of defect and had reasonable opportunity to remedy).

In the present case, the plaintiffs have failed to proffer any evidence that the defendant knew or should have known of any dangerous condition on the premises causing the plaintiffs'

1184314v1

fall. As indicated by all the testimony and evidence, the defendant had no notice of any prior problem with the subject escalator.

## **CONCLUSION**

Summary judgment is appropriate because the plaintiffs have failed to provide any competent evidence of an escalator defect, or that the defendant knew or should have known of any dangerous condition.

WHEREFORE, the defendant moves this Court to enter summary judgment as to all counts against it in the plaintiffs' Complaint.

1184314v1

The Defendant,
DELAWARE NORTH COMPANIES, INC. – BOSTON,
By its attorney,

_____
Lawrence F. Boyle, BBO# 052680
Roger R. Allcroft, BBO# 663651
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02110
(617) 439-7500

Dated: August 31, 2006

### CERTIFICATE OF SERVICE

I, Roger R. Allcroft, do hereby certify that I have this day served the foregoing **DEFENDANT, DELAWARE NORTH COMPANIES, INC. - BOSTON'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**, to all counsel of record in this action by mailing the same, postage prepaid to:

Joseph G. Abromovitz, Esquire
The Law Office of Joseph G. Abromovitz
858 Washington Street, 3rd Floor
Dedham, MA 02026

Dated: August 31, 2006          By:_____
                                        Roger R. Allcroft

14

1184314v1